IN THE COURT OF APPEALS OF IOWA
No. 16-0575
Filed September 13, 2017

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**K'VON JAMES HENDERSON,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

K'Von James Henderson appeals from a verdict of guilty on a charge of first-degree robbery. **AFFIRMED.**

John C. Audlehelm of Audlehelm Law Office, Des Moines, for appellant.

K'von James Henderson, Fort Dodge, appellant pro se.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., Doyle, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

CLERK OF SUPREME COURT

SEP 13, 2017

ELECTRONICALLY FILED

**GOODHUE, Senior Judge.**

K'Von James Henderson appeals from a verdict of guilty on a charge of first-degree robbery. We affirm.

## I. Background Facts and Proceedings

Shortly before closing time on February 10, 2015—pursuant to a plan developed the evening before—Riley Mallett, Cody Plummer, Myles Anderson, Dayton Nelson, and Henderson gathered together to rob the Greenwood Pharmacy in Waterloo. Anderson and Mallett were to do the actual entry, but the plan was changed when Anderson backed out and Plummer replaced him. Nelson and Henderson were to be get-away drivers. Two automobiles were employed; the items taken were to be deposited in the vehicle Nelson was driving, and Henderson was to pick up Plummer and Mallett at a designated location.

Nelson drove Mallett, Plummer, and Anderson to the drug store. Henderson proceeded on to the pick-up point where he was to wait. Mallett and Plummer entered the drug store, and Mallett went to the back and demanded Xanax and cough syrup with promethazine and codeine. At the February 9 meeting, it had been agreed that no guns were to be involved—only a note demanding the pharmacist give them all of the Xanax, Promethazine and Codeine. It was later decided that to succeed with their plan, a gun was needed. Anderson had a gun in his possession and made it available to Mallett. Mallett brandished the gun when making the demand for drugs and threatened to "shoot this bitch up." The pharmacist, Wes Pilkington, believed the handgun looked like the gun police carry and complied with Mallett's demand. Mallett was wearing a

mask, but Pilkington was able to identify him at trial. Plummer stayed at the front of the store and requested money, and the clerk gave him money out of the cash register.

Plummer and Mallett were able to put the loot into the trunk of the vehicle Nelson was driving, but Mallett and Plummer were arrested before they made it to the getaway car being driven by Henderson. Both were apprehended in the vicinity of the drug store. Nelson, Anderson, and Henderson eventually gathered at Nelson's residence with the proceeds from the robbery. The items that had been taken were divided among the three of them. Nelson observed Henderson placing some of the drugs wrapped in tinfoil in his pocket.

Law enforcement proceeded to the Nelson residence and were greeted by Nelson's dogs. Henderson and Nelson began to run. It was unclear whether they were trying to restrain the dogs or escape, but as Henderson ran, his cell phone dropped out of his pocket. Records from the phone reflect multiple calls among the participants, including Henderson, from their respective cell phones immediately before the robbery. Henderson was searched, and a tinfoil package containing Xanax was found. The Nelson residence was searched, and drugs were found that were identified as items taken from the Greenwood Pharmacy. Henderson initially claimed he had been at the Nelson residence the entire evening but later indicated he had been driving around for a period of time and acknowledged that he knew about the robbery before the police had arrived.

Henderson, Anderson, Mallett, and Plummer were each charged with first-degree robbery. Nelson became a witness for the State. Henderson, Mallett and Plummer were tried together. Trial began November 15, 2015, but a mistrial was

declared. The second trial began February 9, 2016, and ended February 17, 2016. Henderson was convicted of first-degree robbery. He appeals, contending there was insufficient evidence to survive a judgment for acquittal. He has also filed a pro se brief claiming ineffective assistance of counsel.

## II. Sufficiency of the Evidence

### A. Error Preservation

Henderson moved for judgment of acquittal on a timely basis, which was denied. Henderson now claims there was a lack of corroboration of an accomplice's testimony and there was no evidence a dangerous weapon was used.

Error preservation has two components: a timeliness component and a substantive component. *State v. Krogman*, 804 N.W.2d 518, 523 (Iowa 2011). Henderson's motion raised the claim of a lack of corroboration of the accomplice's testimony. It did not raise a claim that there was a lack of evidence on the dangerous-weapon component of the first-degree robbery charge.

Henderson asserts the motion can be regarded as a blanket attack that covers all of the elements of the crime. An exception to the substantive component exists when the grounds are obviously understood by the trial court and counsel, and where there was a total lack of proof of an element. *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005). The facts of this case do not support the exception. Error was not preserved on the dangerous weapon issue.

### B. Scope and Standard of Review

Denial of a motion for acquittal will be sustained if there is sufficient evidence to support the verdict. *Id.* Sufficiency-of-the-evidence claims are

reviewed for errors of law. *Id.* Substantial evidence exists if it would convince the finder of fact of a defendant's guilt beyond a reasonable doubt. *Id.* The evidence is viewed in the light most favorable to the State, and all inferences that may be fairly drawn from the evidence are given to the State. *State v. Showens*, 845 N.W.2d 436, 439-40 (Iowa 2014).

*C. Discussion*

"A person may not be convicted upon the testimony of an accomplice or a solicited person unless corroborated by the evidence which shall tend to connect the defendant with the commission of the offense . . . ." Iowa R. Crim. P. 2.21(3). Corroborative evidence need not be strong as long as it fairly connects the accused with the crime. *State v. Berney*, 378 N.W.2d 915, 918 (Iowa 1985).

There is an abundance of evidence supporting Nelson's testimony and Henderson's involvement. Henderson's cell phone reflected numerous calls between him and the other participants immediately before the robbery. He was at Nelson's home with part of the proceeds of the robbery. He still had the Xanax wrapped in tinfoil that Nelson testified he had received when the robbery proceeds were distributed. The events appeared to have played out exactly as Nelson had explained. Dion Nelson, the younger brother of Dayton Nelson, testified to the meeting of the five participants the evening of the robbery and the day before. He also testified Henderson asked him to misrepresent his location at the time of the robbery. Plummer's girlfriend testified the five men, including Henderson, all gathered where she and Plummer resided on February 9 and again on February 10 after 5:00 p.m. There is ample evidence to support the testimony of Nelson. The motion for arrest of judgment was properly overruled.

### III. Ineffective Assistance of Counsel

*A. Preservation of Error*

An exception to the traditional error preservation exists when the claim is ineffective assistance of counsel. *State v. Fountain*, 786 N.W.2d 260, 262-63 (Iowa 2010).

*B. Standard of Review*

When a constitutional issue, such as a claim of ineffective assistance of counsel, is involved our review is de novo. *Lemasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

*C. Discussion*

To prevail on a claim of ineffective assistance of counsel, the claimant must prove by a preponderance of the evidence that: (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). A claim of ineffective assistance of counsel must overcome the presumption that counsel is competent. *Tyler v. State*, 352 N.W.2d 683, 685 (Iowa 1984). An accused is not entitled to perfect representation but only that level of representation that is within the normal range of competency. *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). Strategic choices after proper investigation are virtually unassailable. *Ledezma*, 626 N.W.2d at 143. For relief to be granted, there must a determination that but for the ineffective assistance, there is a reasonable probability the result would have been different. *Id.* at 145. It is not enough to simply allege counsel's performance was inadequate, but the specific instance of inadequacy and how competent representation would have probably changed the outcome must be

shown. *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994). When the record is adequate to make a ruling on ineffective assistance of counsel on the direct appeal, the court is permitted to proceed with a ruling, but otherwise, the court must preserve the claim for postconviction relief. *Artzer*, 609 N.W.2d at 531. Preservation of an issue of ineffective assistance for a postconviction proceeding generally requires some specific reference to something in the record that supports an ineffective-assistance claim and is not intended to preserve an issue to simply allow a claimant to conduct a fishing expedition.

We find the record adequate to address all claims of ineffective assistance of counsel. We will consider each claim of ineffective assistance of counsel independently.

*1. Claim of Ineffective Voir Dire*

Henderson waived reporting of the voir dire. He failed to make a record of the proceedings by either a supplemental statement of the proceedings under Iowa Rule of Appellate Procedure 6.806 or by creating a bill of exceptions under Iowa Rule of Criminal Procedure 2.25. There is no record upon which to gauge or judge his counsel's ineffectiveness in the voir dire process. The only possible consideration would be a claim that waiver of reporting the voir dire is per se ineffective assistance of counsel, but no authority for such a proposition has been cited. Accordingly we consider the issue waived. *See* Iowa R. App. P. 6.903(2)(g)(3).

*2. Henderson Claims the State Did Not Prove That He Had Knowledge or an Intent That a Dangerous Weapon Was To Be Used in the Commission of the Robbery*

The issue was not raised in the motion for acquittal, but it can still be considered under the ineffective-assistance rubric.

Henderson was involved in the planning and execution of the robbery. He was there when the note threatening to "shoot this bitch up" was written. "All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid or abet its commission, shall be charged, tried, and punished as principles." Iowa Code § 703.1 (2015). Nelson testified they all knew a gun would be used. Whether Henderson knew or did not know a gun would be involved makes no difference.

To the extent he claims no gun was involved and makes reference to a bb gun, Nelson testified he had handled the gun Mallett used and it appeared to be like a police-issue handgun. Pilkington testified the gun Mallett used was a police-style handgun. It is obvious a handgun like police use is a dangerous weapon. It is not necessary to prove the obvious.

*3. Henderson's Concern About Confrontation of the Witnesses Relates to the Statements of Non-Testifying Witnesses*

The matter was resolved in a pretrial hearing in which the State agreed not to use any non-testifying defendant's police interview against anyone but the defendant making the statement. Henderson does not claim that the State violated the agreement but rather contends the result was to exclude statements non-testifying defendants made that were exculpatory as to him. He contends that the motion in limine resulting in the State's agreement to limit the testimony

of the non-testifying defendants only to statements that incriminated the party making the statements was ineffective assistance of counsel as to him because the effect was to eliminate statements other defendants had made that were exculpatory to him. The motion in limine and the agreement of the State, however, addressed only statements incriminating the other defendants and, to the extent otherwise admissible, placed no limitation on exculpatory statements made about the other defendants.

### 4. Henderson's Claim of Counsel's Failure to Take the Deposition of Dion Nelson

Henderson contends that if Dion Nelson's deposition had been taken, he could have been impeached with the deposition. Why or how his trial testimony would be contradictory to what he might have said in a deposition or why the outcome of the trial would have been different was not contained in Henderson's brief.

### 5. Henderson's Claim That Counsel Failed to Object to the Introduction of the Criminal Record of Myles Anderson

There was an objection to the introduction of testimony that Anderson had previously stolen firearms, including handguns. Finding the testimony to be more probative than prejudicial, and relevant as to Anderson's access to a weapon and where it came from, the court denied counsel's efforts to exclude the testimony. The testimony, however, was limited to a law enforcement officer stating he had participated in investigating a theft of guns that included police-style handguns and not all of the police-style handguns were recovered. The officer further testified Anderson was involved in the robbery.

We find no instance of ineffective of assistance of counsel in the above claims. To the extent Henderson may have raised other defenses in his pro se brief, they are deemed waived for failing to state with specificity which part of the record he is relying on and/or for failing to cite any authority. *See* Iowa R. App. P. 6.903(2)(g)(3).

## IV. Conclusion

Henderson's conviction of first-degree robbery is affirmed.

**AFFIRMED.**



IOWA APPELLATE COURTS

State of Iowa Courts

**Case Number**
16-0575

**Case Title**
State v. Henderson

Electronically signed on 2017-09-13 08:41:40